IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-CV-035-RJC-DCK

| | |
|---|---|
| COURTNEY ASELTINE, and RICH ASELTINE, as parents of minor C.A., ) ) ) Plaintiffs, ) ) v. ) ) BOARD OF DIRECTORS OF CORVIAN COMMUNITY SCHOOL, and CORVIAN COMMUNITY SCHOOL, INC., ) ) ) ) ) Defendants. ) ) | MEMORANDUM AND RECOMMENDATION |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Dismiss" (Document No. 9). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>granted</u>.

**I. BACKGROUND**

Plaintiffs Courtney Aseltine and Rich Aseltine ("Plaintiffs" or "the Aseltines"), parents of minor C.A. ("C.A."), initiated the present lawsuit with the filing of a "Complaint For Damages" (Document No. 1) against Defendants the Board of Directors of Corvian Community School and Corvian Community School ("Defendants" or collectively, "Corvian") on January 26, 2022. By the instant Complaint, Plaintiffs allege that Corvian failed

> to provide C.A. a free appropriate public education (FAPE), in violation of the Individuals with Disabilities Education Improvement Act ('IDEA') and corresponding state law, and [acted with] discriminatory conduct against Plaintiffs based on C.A.'s disability in an education program receiving

> federal funds, in violation of Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act.

(Document No. 1, p. 1).

Some background regarding the relevant legal landscape underpinning this case is necessary to understand the instant motion. The Individuals with Disabilities Education Act ("IDEA") "offers federal funds to states in exchange for a commitment to furnish a 'free appropriate public education,' more commonly known as a FAPE, to all children with certain physical or intellectual disabilities." K.I. v. Durham Public Schs. Bd. of Educ., 54 F.4th 779, 784 (4th Cir. 2022) (citing 20 U.S.C. § 1400 *et seq.*; Fry. v. Napoleon Cmty. Sch., 580 U.S. 154, 158 (2017)). A FAPE constitutes "special education and related services" that meet four criteria: they are "(1) without charge, (2) meet the standards of the state educational agency, (3) include the appropriate level of education in the state involved and (4) are provided in conformity with an individualized education program ('IEP') as required by the IDEA." K.I., 54 F.4th at 785 (citing Bd. of Educ. of Hendrick Hudson Cent. Sch. v. Rowley, 458 U.S. 176, 188 (1982)). "Once a student is deemed eligible, a team consisting of the student's parent, teachers, and other school officials (IEP team) convenes to develop an 'individualized education program,' or IEP, for the child." Johnson v. Charlotte-Mecklenburg Schools Bd. of Educ., 20 F.4th 835, 839 (4th Cir. 2021). "The IEP ensures that eligible students receive a FAPE, and sets forth the student's current academic skills, [his] annual goals, and the 'special education and related services' to which [he] is entitled." Id.

Parents of students who have been denied a FAPE have recourse in a state administrative system. In North Carolina, a parent "may file a formal complaint with the North Carolina Office of Administrative Hearings…and receive a 'due process hearing' before an administrative law

2

judge (ALJ)." Id. (citing 20 U.S.C. § 1415; N.C. Gen. Stat. §§ 115C-109.6(a), (f)). At the time the administrative proceedings in this case were conducted, "North Carolina had a two-tiered system." K.I., 54 F.4th at 789. Following issuance of the ALJ's decision, "a parent could appeal" to the State Board of Education, which would appoint a review officer. Id. (citing N.C. Gen. Stat. Ann. § 115C-109.9(a)). "A party unhappy with the review officer's decision could then 'institute a civil action in State court within 30 days after receipt of the notice of the decision or in federal court as provided in 20 U.S.C. § 1415.'" Id. (citing N.C. Gen. Stat. Ann. § 115C-109.9(d)).

Factually, the basis for the instant lawsuit arises out of the enrollment of C.A. – Plaintiffs' son – enrollment at Corvian Community School, a public charter school in Mecklenburg County, during the 2019-2020 and 2020-2021 school years. Id. at pp. 13-14.[1] According to Plaintiffs' Complaint, "C.A. is a seven year old, second grade student who qualifies for special education services under the primary category of hearing impaired." Id. at p. 13. His impairments are described as follows:

> He has a history of bilateral enlarged vestibular aqueduct [] and subsequent sensorineural hearing loss. He uses a cochlear implant in his left ear and wears a hearing aid in his right ear. Because of his EVA, he is at risk for a sudden decrease or complete loss of hearing in his right ear. C.A. has delayed receptive and expressive language and receives speech-language services in these areas. C.A. has also been diagnosed with mild-moderate sensory processing disorder and a specific learning disability in reading and written expression as well as dyslexia.

Id. at p. 14. Allegedly, "C.A.'s disabilities affect his abilities in the areas of academics, behavioral, functional, social, and other educational areas[sic]…it is difficult for C.A. to participate in grade-level curriculum without supports and modifications." Id. at p. 15.

---

[1] Notably, C.A. is no longer enrolled in the CMS public school system, as he attends private school in Charlotte.

3

In mid-March 2020, during global lockdowns on account of the COVID-19 pandemic, Plaintiffs contend that the Charlotte-Mecklenburg School District ("CMS") "forcibly changed C.A.'s placement from general education to [virtual learning] without parental input and without providing his parents the opportunity to meaningfully participate" in that decision. Id. at p. 16. The decision to close schools and transition students to remote learning was made by Governor Roy Cooper on March 14, 2020, by Executive Order No. 117. Id. at p. 17. Plaintiffs contend that Governor Cooper, however, "did not tell school districts that [they] could stop complying with the requirements of the IDEA." Id. Indeed, Plaintiffs contend that "[t]he North Carolina Department of Public Instruction advised North Carolina school districts that it must receive agreement from parents prior to amending an IEP." Id. at p. 18. The Aseltines further allege that they "were not provided an opportunity to request additional supports and services while C.A. was unilaterally placed on [] virtual [learning]." Id. at p. 16. During C.A.'s remote schooling, he allegedly "regressed," and he "did not receive all of the special education and related services outlined in his May 8, 2020 IEP." Id. at p. 17.

"On November 9, 2020," Plaintiffs allege that "Corvian reopened its elementary campus to all students[, and] C.A. was invited to attend in-person instruction four (4) days each week because he had an IEP." Id. at p. 19. "On November 12, 2020, Corvian's elementary campus flooded." Id. "Following the flooding, Corvian [allegedly] decided to move its elementary students back to 100% remote learning," but without input from the Aseltines. Id. Plaintiffs contend that "[t]he District also had an opportunity to provide C.A. with in-person services via a private school placement until it was able to offer in-person services but refused to offer that option." Id. at p. 21. Because of difficulties with his ability to independently use technology, C.A., Plaintiffs contend, "missed [school] session if his parents were unavailable to sit down with

4

him and log him into his device for the virtual meetings." Id. at p. 23. Overall, Plaintiffs contend, Corvian "did not implement C.A.'s IEP during the 2019-20 and 2020-21 school years from about March 13, 2020 through April 2021." Id. at p. 32.

On account of C.A.'s alleged academic regression and difficulties learning in the home environment, Plaintiffs filed a Due Process Petition on C.A.'s behalf on April 27, 2021, with the North Carolina Office of Administrative Hearings. Id. at pp. 2, 41. In their Petition, Plaintiffs "alleged that Corvian had denied C.A. his procedural and substantive rights to FAPE under the IDEA and alleged violations of Section 504 and the [Americans with Disabilities Act ('ADA')]." Id. The procedural history at the administrative level from this point is complex, and thus the undersigned will only recount the most relevant points. The due process hearing was continued, and Corvian simultaneously filed a motion to dismiss. Id. Administrative Law Judge ("ALJ") Malherbe granted the motion to dismiss in part (dismissing the ADA and Section 504 claims) and denied the motion in part. Id. at pp. 41-42. According to the Complaint, "Defendant requested discovery from the Plaintiffs," part of which "included social media posts, text messages, emails, evaluation protocols, screening forms, treatment records, logs of services, [and] progress monitoring for an indefinite time period." Id. at p. 42. Plaintiffs categorized these requests as "unduly burdensome," prompting Defendants to file a motion to compel on July 7, 2021. Id. at pp. 42-43.

The ALJ's paralegal contacted the parties' attorneys, allegedly, Plaintiffs describe, to set up "a conference call with Judge Malherbe to discuss scheduling." Id. at p. 43. The conference call took place on July 20, 2021, and it apparently did not include a court reporter. Plaintiffs contend that "ALJ Malherbe opened a discussion on [Corvian's] Motion to Compel," for which Plaintiffs "were not prepared" for discussion. Id. The following day, on July 21, 2021, the ALJ

5

issued two orders.  Id.  The first order "indicated that 'Stipulations, final witness lists, and marked exhibits shall be exchanged between the parties on or before August 23, 2021.'"  Id.  The second order directed Plaintiffs to "fully answer and verify Defendant's discovery requests regarding expert witnesses sent on June 3, 2021," allegedly requiring compliance in just "one day from the telephone call."  Id. at p. 44.  A few days later, on July 26, 2021, Defendants allegedly "filed a Motion for Sanctions claiming the Plaintiffs' responses fell short of the Order to Compel."  Id.  Plaintiffs contended that they had not formally retained any experts and thus no responsive contracts existed.  Id.  A second motion for sanctions was filed on August 2, 2021 by Corvian, despite the fact, Plaintiffs allege, that they "produced thousands of pages of discovery."  Id. at p. 45.  Oral argument was heard by ALJ Malherbe on August 18, 2021 via videoconference, and a court reporter was allegedly present.  Id. at p. 46.

The ALJ issued his "Final Decision Order of Dismissal" on August 23, 2021.  See (Document No. 1-1).  The order dismissed the due process petition with prejudice as a sanction pursuant to North Carolina Rule of Civil Procedure 37(b)(2)(c), which the ALJ stated "authorizes dismissal of an action with prejudice for failure to fully respond to [Corvian's] discovery requests and to comply with [the ALJ's] Order Compelling Discovery."  Id. at p. 4.  Plaintiffs allegedly appealed the ALJ's decision on September 20, 2021 to the North Carolina State Board of Education, and "S[H]RO [State Hearing Review Officer] Walters was assigned to the matter."  (Document No. 1, p. 47);  (Document No. 10, p. 2).  SHRO Walters issued his "Decision" on October 28, 2021, upholding the ALJ's decision and affirming dismissal of the case with prejudice.  See (Document No. 1-2).  As Plaintiffs' Complaint states, neither of these decisions – either by the ALJ or the SHRO – made "any findings of fact or conclusions of law based upon the alleged facts in the Plaintiffs' Due Process Petition."  (Document No. 1, p. 4).

6

Plaintiffs' Complaint purports to state seven claims against Corvian: (1) "Appeal of OAH Decision;" (2) "[t]he OAH Final Decision was not regularly made;" (3) "[a]ppeal of SRO Decision;" (4) "[d]iscrimination based on Disability in Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq*.;" (5) "[d]iscrimination based on disability in violation of the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq*.;" (6) "[v]iolation of the Fourteenth Amendment 42 U.S.C. § 1983;" and (7) "[a]ttorney's Fees and Costs." Id. at pp. 49-83. Plaintiffs request relief in the form of reversal of the SHRO decision affirming the ALJ's dismissal of the due process petition with prejudice, placement of C.A. in private school and provision of transportation to and from the private school, compensatory education and related services, all appropriate relief available under IDEA, attorneys' fees and costs, and compensatory and punitive damages. See id. at pp. 84-85.

"Defendants' Motion To Dismiss" (Document No. 9) was filed June 30, 2022. "Plaintiffs' Response Memorandum In Opposition To Defendants' Motion To Dismiss" (Document No. 15) was filed July 29, 2022. Defendants' "Reply Memorandum In Support Of Defendants' Motion To Dismiss" (Document No. 19) was filed August 12, 2022.

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). The plaintiff has the burden of proving that subject matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers

Union, 192 F.3d 417, 422 (4th Cir. 1999). "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

In reviewing and analyzing administrative decisions under IDEA, "[c]ourts use a modified de novo standard." Charlotte-Mecklenburg Bd. of Educ. v. Brady, 3:18-CV-463-RJC-DSC, 2022 WL 989231, at *3 (W.D.N.C. Mar. 31, 2022), *appeal filed* No. 22-1532 (4th Cir. 2022) (internal quotations and citations omitted). District courts should "give[] due weight to the underlying administrative proceedings and deference to the state administrative agency." K.I., 54 F.4th at 788 (citations omitted). Indeed, "state educational administrative agencies possess a level of expertise and familiarity with educational standards and medical information regarding disabilities." Kirkpatrick v. Lenoir Cty. Bd. of Educ., 216 F.3d 380, 385 (4th Cir. 2000). Thus, "in reviewing state administrative decisions in IDEA cases, courts are required to make an independent decision based on a preponderance of the evidence, while giving due weight to administrative proceedings." Doyle v. Arlington Cty. Sch. Bd., 953 F.2d 100, 103 (4th Cir. 1991). This standard requires that factual findings made in the state administrative proceedings are to "be considered *prima facie* correct" so long as they are "regularly made." J.P. v. Cty. Sch. Bd. of Hanover Cty., Va., 516 F.3d 254, 259 (4th Cir. 2008). An IDEA action "filed in federal court 'is an original civil action, not an appeal from a state administrative agency.'" K.I., 54 F.4th at 789 (citing Johnson, 20 F.4th at 844). Federal district courts do not have the "power to sit as appellate tribunals over state court or administrative proceedings," and thus this Court cannot "supervise and supplant state

administrative action by affirming, reversing, or modifying administrative decisions." Kirkpatrick, 216 F.3d at 387.

## III. DISCUSSION

### 1. Failure to Exhaust Administrative Remedies – IDEA Claims

Defendants' first argument in support of dismissal of Plaintiffs' purported IDEA claims[2] is that Plaintiffs failed to exhaust administrative remedies. (Document No. 10, p. 7). Defendants contend that the Court lacks subject matter jurisdiction because "[n]either the ALJ nor the SHRO reached the merits of the underlying IDEA claims as there were no findings or decision concerning the merits of C.A.'s claim." Id. Thus, Defendants argue, Plaintiffs' "administrative remedies have not been exhausted." Id. at pp. 7-8. Furthermore, Defendants contend that "[n]one of the three narrow exceptions to the exhaustion requirement apply in this instance." Id. at p. 8.

Plaintiffs, on the other hand, contend that they "[f]ollowed [t]he [p]rocedural [r]equirements of [t]he IDEA," and as such, "[s]ubject matter jurisdiction is proper." (Document No. 15, p. 9). Furthermore, they contend that "exhaustion is futile when the case was dismissed without a hearing on the merits in violation of the IDEA at both the ALJ and SRO level." Id.

The undersigned begins the analysis of this argument with an examination of recent legal developments since the parties briefed the instant motion to dismiss. In K.I. v. Durham Public Schools, the Fourth Circuit held that "the IDEA's exhaustion requirement is not a jurisdictional requirement but a claims-processing rule." 54 F.4th at 792. Thus, although the rule is mandatory when "properly raised," it does not concern the "court's authority" but rather the party's "procedural obligations." Id. at 791-92. Notably, the Fourth Circuit's articulation of this rule represents a departure from the circuit's previous rule: "that the IDEA's exhaustion requirement

---

[2] The undersigned will liberally construe Counts 1, 2, and 3 as stating a claim pursuant to the IDEA statute. See (Document No. 1, pp. 49-70).

was jurisdictional." Id. at 790 (citing MM v. Sch. Dist. of Greenville Cty., 303 F.3d 523 (4th Cir. 2002)).

Importantly, courts have found that a plaintiff has not exhausted administrative remedies where an ALJ dismisses a claim on procedural grounds, and thus does "not consider the merits of [a petitioner's] claim." M.E. v. Buncombe Cty. Bd. of Educ., 72 F. App'x 940, 942 (4th Cir. 2003); see also Brady, 2022 WL 989231, at *8 (the argument "that IDEA claims are exhausted after parents go through the administrative process prior to filing in federal court regardless of whether the state administrative agency has ruled on the merits of the claims[] is unavailing in light of Fourth Circuit caselaw"); see also T.O. v. Cumberland Cty. Bd. of Educ., 2017 WL 979025, at * (E.D.N.C. Mar. 13, 2017) ("there must be a decision on the merits at the state-level administrative proceeding" to find that a plaintiff has exhausted administrative remedies") (internal quotations and citations omitted).  Indeed, although the Fourth Circuit in M.E. found that the fact that "there were no 'findings or decision' regarding the merits of [the plaintiff's] claim for the district court to review [meant that] the district court did not have jurisdiction under § 1415(i)(2)," the result that such precedent directs here is not dissimilar.  72 F. App'x at 942. Although K.I. has instructed that the issue of administrative exhaustion under IDEA is not jurisdictional but rather implicates a mandatory claims-processing rule, the result is the same: Plaintiffs have not met their procedural burden of demonstrating administrative exhaustion because the ALJ and the SHRO did not decide Plaintiffs' claims on the merits.  See 54 F.4th at 792.  Dismissal of any purported IDEA claims is thus appropriate.  Even if a federal court "might have handled things differently," there is no authority for "overrul[ing] North Carolina's application of its state procedural rules," and no decision on the merits has been made at the administrative level.  K.I., 54 F.4th at 794.

11

### a. Exceptions to the Administrative Exhaustion Requirement

Plaintiffs argue that even if the Court were to find that they have not exhausted their administrative remedies (which the undersigned respectfully concludes they have not), an exception to the exhaustion requirement applies. Plaintiffs state that the futility exception applies because they contend that they "cannot receive a final decision on the merits because this Court cannot remand this matter to the SRO or ALJ," and thus, there is no "avenue for the ALJ or SRO to make a decision on the merits." (Document No. 15, p. 17). Defendant, on the other hand, contends that the futility exception does not apply because "a dismissal for C.A.'s violations of the discovery rules and the ALJ's Order Compelling discovery does not call into question the ALJ's ability to reach the merits if ultimately it was called upon to do so." (Document No. 10, p. 8). Corvian contends that "C.A.'s claims were resolvable by the administrative agency and but for C.A.'s refusal to comply with the ALJ's orders and the applicable rules, the claims would have been 'resolved' on the merits, making the futility exception inapplicable." (Document No. 19, p. 11).

Respectfully, the undersigned finds the Defendants' argument more persuasive. "There are three 'narrow' exceptions to the exhaustion requirement whereby a party need not exhaust its administrative remedies under the IDEA before bringing a claim in federal court." Brady, 2022 WL 989231, at *8. Those "three narrow exceptions" are: (1) "when the administrative process would have been futile;" (2) "when a school board failed to give parents proper notification of their administrative rights;" and (3) "when administrative exhaustion would have worked severe harm upon a disabled child." MM, 303 F.3d at 536. As stated, the undersigned's analysis will focus solely on the futility exception, as Plaintiffs do not raise arguments under the other two exceptions. See (Document No. 15).

"The futility exception applies when the IDEA violation at issue is unresolvable through the appeals process." Brady, 2022 WL 989231, at *9 (quoting Koster v. Frederick Cty. Bd. of Educ., 921 F. Supp. 1453, 1455 (D. Md. 1996)). And, as this court has stated, "[t]he fact that the ALJ was not able to rule on the merits of the IDEA claims at issue…has no bearing on the state administrative agency's overall ability to resolve these claims." Brady, 2022 WL 989231, at *9. As Defendants state, "C.A.'s own actions/inactions are the reason that his case was dismissed." (Document No. 19, p. 10). This does not mean that the administrative process was unworkable for resolution of Plaintiffs' due process petition. The undersigned respectfully concludes that the futility exception does not apply to excuse Plaintiffs from the requirement of administrative exhaustion. Dismissal of any purported IDEA claims is therefore respectfully recommended.

### 2. Failure to Exhaust Administrative Remedies – Section 504 of the Rehabilitation Act and ADA Claims

Pursuant to 20 U.S.C. § 1415(l),

> [n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l). To understand whether the administrative exhaustion requirement applies for Plaintiffs' claims brought pursuant to Section 504 and the ADA, the Supreme Court has emphasized that "if the complaint seeks relief for the denial of a FAPE," exhaustion is required. K.I., 54 F.4th at 794 (citing Fry v. Napoleon Cmty. Sch., 580 U.S. 154, 168 (2017)). To understand whether "the gravamen of a complaint against a school concerns the denial of a FAPE, or instead

13

addresses disability-based discrimination," the Supreme Court directs federal district courts to two questions. Fry, 580 U.S. at 171. The first is whether the "plaintiff [could] have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school." Id. The second question is whether "an *adult* at the school—say, an employee or visitor—[could] have pressed essentially the same grievance." Id. If the answer to those questions is no, the lawsuit concerns the denial of a FAPE. Id.

Here, the undersigned finds that the answer to both questions is no – the essence of Plaintiffs' Complaint is that C.A. was denied access to various learning aides that would allow him to succeed as a student under his special education plan during the virtual, at-home schooling period caused by the pandemic and the flooding of the Corvian school building. See (Document No. 1, p. 27). Plaintiffs could not lodge these same concerns if the conduct had occurred at a non-school facility, for the essence of the Complaint relates to deprivation of his education-related aides. Nor could an adult at the school press the same grievances that Plaintiffs allege here, for only a student with an IEP could file a lawsuit concerning the type of conduct at issue in this case. Therefore, the undersigned concludes that the lawsuit concerns the denial of a FAPE. Respectfully, therefore, the undersigned finds that administrative exhaustion is required for Plaintiffs' Section 504 of the Rehabilitation Act and ADA claims. Given the previous section's conclusion that Plaintiffs failed to exhaust administrative remedies on any purported IDEA claims, the same conclusion applies here. Dismissal is therefore recommended for Plaintiffs' Section 504 and ADA claims (counts 4 and 5).[3]

### 3. Section 1983 Claim

---

[3] As Defendants state in their reply brief, Plaintiffs effectively "concede the issue" that exhaustion is required for their section 504 and ADA claims when they seek relief for denial of a FAPE. (Document No. 19, p. 12). Indeed, the undersigned reviewed Plaintiffs' responsive brief, and they in fact did not address the exhaustion argument on these two claims. See (Document No. 15).

14

Case 3:22-cv-00035-RJC-DCK    Document 20    Filed 04/10/23    Page 14 of 17

Plaintiffs bring their sixth claim for violation of the Fourteenth Amendment's Equal Protection Clause pursuant to 42 U.S.C. § 1983. See (Document No. 1, pp. 77-82). Plaintiffs state that Corvian intentionally treated hearing-impaired children and children with "learning disabilities differently than their nondisabled peers in violation of their constitutional and statutory rights by" instituting a "widespread discriminatory practice whereby they refused to provide children with [hearing impairments with] in-person special education services." Id. at p. 80. Plaintiffs' section detailing the allegations supporting their section 1983 claim is rife with references to C.A.'s IEP and his rights under the IDEA. See id. at pp. 77-82.

The Fourth Circuit has stated that "IDEA provides a comprehensive remedial scheme for violations of its own requirements." Sellers v. Sch. Bd. of City of Mannassas, Va., 141 F.3d 524, 529 (4th Cir. 1998). As such, "parties may not sue under section 1983 for an IDEA violation." Id. Furthermore, "[t]he Supreme Court has held that IDEA contains 'a remedial scheme sufficiently comprehensive to supplant § 1983,' so that disabled children must pursue claims to a free appropriate public education solely through that statutory scheme." McNulty v. Bd. of Educ. of Calvert Cty., 2004 WL 1554401, at *7 (D. Md. July 8, 2004) (citing Blessing v. Freestone, 520 U.S. 329, 347 (1997)). In McNulty, the District of Maryland concluded that Plaintiffs could not state a separate section 1983 claim when the complaint was rife with references about being denied an appropriate FAPE. Id. Indeed, the court concluded that if Plaintiffs "wish[] to pursue [their] claims for alleged deprivation and denial of a 'free and appropriate education,' [they] may do so only under IDEA." Id. at *8; see also O.V. v. Durham Public Schs. Bd. of Educ., 2018 WL 2725467, at *26 (M.D.N.C. June 6, 2018), *report and recommendation aff'd*, 2018 WL 3370644 (M.D.N.C. July 10, 2018) (same).

The undersigned concludes that Plaintiffs cannot state a separate section 1983 claim when the basis for such a claim relies entirely upon IDEA-related allegations. The section of Plaintiffs' Complaint detailing the factual allegations supporting their section 1983 claim for a violation of Equal Protection rights is entirely composed of facts alleging denial of a FAPE and the failure of Corvian to follow C.A.'s IEP. See (Document No. 1, pp. 77-82). As in Bouabid v. Charlotte Mecklenburg Schs. Bd. of Educ., Plaintiffs' only real reference to discriminatory treatment is that disabled children and those with learning disabilities were treated "differently than their nondisabled peers," but then the Complaint lists a laundry list of grievances that are specific to C.A.'s IEP. (Document No. 1, p. 80); see Bouabid v. Charlotte Mecklenburg Schs. Bd. of Educ., 3:19-CV-030-RJC-DSC, 2020 WL 1082491, at *5 (W.D.N.C. Mar. 6, 2020) ("the Complaint is devoid of allegations identifying students who are similarly situated to Plaintiff and allegations of any disparate treatment") (citing Martin v. Duffy, 858 F.3d 239, 252 (4th Cir. 2017)), *aff'd*, 2023 WL 2506427 (4th Cir. Mar. 15, 2023). Plaintiffs' response does not even attempt to argue that it has pleaded anything other than conclusory allegations in support of their section 1983 claim, nor does it refute Defendants' argument that a section 1983 claim must be dismissed absent indication that the basis for the claim is non-IDEA related. See (Document No. 15). Here, Plaintiffs' section 1983 claim is based entirely on IDEA-related factual allegations, and thus, the claim should be dismissed.

### 4. Attorneys' Fees and Costs

Plaintiffs' Complaint seeks attorneys' fees and costs pursuant to IDEA. (Document No. 1, p. 83). The IDEA statute provides that a court in its discretion can award attorneys' fees "to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(II). Given that the undersigned is respectfully recommending that Plaintiffs' claims, including any

16

purportedly alleged IDEA claim, be dismissed, Plaintiffs' claim for attorneys' fees should also be dismissed under Rule 12(b)(6).

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendants' Motion To Dismiss" (Document No. 9) be **GRANTED**.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: April 7, 2023

David C. Keesler
United States Magistrate Judge