UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00035-RJC-DCK

| | |
|---|---|
| C.A., a minor, by his parents and legal guardians, C.A. and R.A., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | **ORDER** |
| BOARD OF DIRECTORS OF CORVIAN ) COMMUNITY SCHOOL, and CORVIAN ) COMMUNITY SCHOOL ) ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss, (Doc. No. 9), and the Magistrate Judge's Memorandum and Recommendations ("M&R"). (Doc. No. 20). For the reasons stated below, the M&R, (Doc. No. 20), is **ADOPTED IN PART** and Defendants' Motion to Dismiss, (Doc. No. 9), is **GRANTED**.

**I.     BACKGROUND**

Neither party has objected to the Magistrate Judge's statement of the factual and procedural background of this case. Therefore, the Court adopts the facts as set forth in the M&R, reviewing only those facts most pertinent to the issues at hand. Plaintiff C.A. is a minor child who suffers from hearing impairments and several learning disabilities. (Doc. No. 15 at 6). During the 2019-20 and 2020-21 school years, C.A. was enrolled at Corvian Community School (together with the Board of Directors of Corvian Community School, "Defendants" or "Corvian") with an Individualized Education Plan ("IEP") to account for his disabilities. On March 16, 2020, under Governor Roy Cooper's Executive Order No. 117, C.A. began remote learning, and he remained in remote learning until October 2020, when he returned to in-person learning at Corvian with

1

some, but not all, other students. A month later, Corvian brought all students back to in-person learning for either two or four days per week; because of his IEP, C.A. attended in person for four days per week. Just three days after fully reopening their campus, however, a flooding incident forced Corvian to close it, and C.A. returned to remote learning.

C.A. and his parents (together, "Plaintiffs") were dissatisfied with the opportunities and attention C.A. received during remote learning, and they felt the treatment was a violation of C.A.'s statutory right to receive a free appropriate public education ("FAPE"). Thus, on April 27, 2021, Plaintiffs filed a Petition for Contested Case Hearing in the North Carolina Office of Administrative Hearings, alleging that Defendants violated the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et. seq. ("IDEA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); and Title II of the Americans with Disabilities Act of 1973, 40 U.S.C. § 12132 ("ADA").

The administrative proceedings were complicated. Ultimately, however, after Plaintiffs failed to fully comply with Corvian's discovery requests and an Order Compelling Discovery Responses from the ALJ, the ALJ dismissed Plaintiffs' petition with prejudice without making "any findings of fact or conclusions of law based upon the alleged facts in the Plaintiffs' Due Process Petition." (Doc. No. 1 at 4; Doc. No. 1-1). Plaintiffs appealed the decision to the North Carolina State Board of Education, and a State Hearing Review Officer affirmed the ALJ's decision to dismiss the petition as a sanction for a discovery related matter. Following those two decisions, Plaintiffs filed this action on January 26, 2022, alleging violations of the IDEA, Section 504, the ADA, and 42 U.S.C. § 1983.

## II. STANDARD OF REVIEW

In evaluating IDEA claims, district courts "conduct a modified de novo review, giving due weight to the underlying administrative proceedings, but are empowered to receive and consider evidence outside the administrative record." *Charlotte-Mecklenburg Cnty. Bd. of Educ. v. Brady*, 66 F.4th 205, 211 (4th Cir. 2023) (internal citations omitted). "[A] a district court does not simply affirm, reverse, or vacate the decision of the state administrative agency," *Kirkpatrick v. Lenoir Cnty. Bd. of Educ.*, 216 F.3d 380, 382, 384 (4th Cir. 2000), because "[t]he limited, original jurisdiction of federal district courts in IDEA cases does not extend to appellate review of state administrative IDEA complaints." *Johnson v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 20 F.4th 835, 845 (4th Cir. 2021).

"Though the reviewing court in an IDEA case must make an independent decision based on a preponderance of evidence, the ALJ's findings are generally considered prima facie correct." *Bouabid v. Charlotte-Mecklenburg Sch. Bd. of Educ.*, 62 F.4th 851, 857 (4th Cir. 2023) (internal citations omitted). District courts should not, therefore, "substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982).

An ALJ's factual findings are presumed correct if "regularly made." *Doyle v. Arlington County School Bd.*, 953 F.2d 100, 105 (4th Cir. 1991). "When determining whether a hearing officer's findings were 'regularly made,'" the Fourth Circuit "typically focuse[s] on the process through which the findings were made." *J.P. v. County Sch. Bd.*, 516 F.3d 254, 259 (4th Cir. 2008). Factual findings are "regularly made" when the hearing officer conducts "a proper hearing, allowing the parents and the School Board to present evidence and make arguments, and the hearing officer by all indications resolved the factual questions in the normal way, without flipping

3

a coin, throwing a dart, or otherwise abdicating his responsibility to decide the case." *Id.* "Factual findings are not regularly made if they are reached through a process that is far from the accepted norm of a fact-finding process." *Id.*

While regularly made factual findings are given deference, an ALJ's determination based on a misunderstanding of law or fact, or containing insufficient reasoning, is entitled to little, if any, deference. *Combs v. Sch. Bd. of Rockingham Cnty.*, 15 F.3d 357, 361 (4th Cir. 1994); *Q.C-C. v. D.C.*, 164 F. Supp. 3d 35, 49 (D.D.C. 2016). This Court affords no deference to conclusions of law made by a state administrative officer, but instead reviews those conclusions de novo. *E.L. ex rel. G.L. v. Chapel Hill-Carrboro Bd. of Educ.*, 975 F. Supp. 2d 528, 537 (M.D.N.C. 2013); *Fitzgerald v. Fairfax Cty. Sch. Bd.*, 556 F. Supp. 2d 543, 558–59 (E.D. Va. 2008).

## III. DISCUSSION

Defendants seek dismissal on two bases, the legal underpinnings of which have shifted considerably since Defendants first filed their motion to dismiss: lack of subject matter jurisdiction over Counts I-V under Rule 12(b)(1), and failure to state a claim in Counts I-VI under Rule 12(b)(6). Now, under new precedent from the Fourth Circuit and the Supreme Court of the United States, Counts I-III, seeking relief under the IDEA, are dismissed for Plaintiffs' failure to exhaust their administrative remedies, and Counts IV-VI, seeking relief under Section 504, the ADA, and 42 U.S.C. § 1983, are dismissed for failure to state a claim upon which relief can be granted.

### 1. Plaintiffs' IDEA Claims Fail

"The IDEA provides funds for states to educate children with disabilities, subject to conditions imposing substantive requirements on the education that is provided." *R.F. v. Cecil Cty. Pub. Sch.*, 919 F.3d 237, 241 (4th Cir. 2019). In return for the receipt of federal education funding, states are required by the IDEA to provide each of their disabled children with a FAPE." *M.M. v.*

4

*Sch. Dist.*, 303 F.3d 523, 526 (4th Cir. 2002). "[A] FAPE comprises 'special education and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 158 (2017) (quoting 20 U.S.C. §§ 1401(9), (26), (29)).

Because parents and school representatives sometimes cannot agree on the best way to educate students with disabilities, "the IDEA establishes formal procedures for resolving disputes." *Fry*, 580 U.S. at 158. The IDEA allows states to choose between a one-or two-tiered system of administrative review. *G.L. v. Chapel Hill-Carrboro Bd. of Educ.*, 975 F. Supp. 2d 528, 531 (M.D.N.C. 2013). North Carolina provides a two-tiered administrative review process. *Id.* at 532; *see also* N.C. Gen. Stat. §§ 115C-109.6, -109.9. First, a party may file with the Office of Administrative Hearings ("OAH") a petition for a due process hearing regarding "any matter relating to the identification, evaluation, or educational placement of a child, or the provision of a [FAPE]." N.C. Gen. Stat. § 115C-109.6(a). The OAH appoints an ALJ to conduct the hearing, who then must issue a written decision containing findings of fact and conclusions of law. N.C. Gen. Stat. § 115C-109.6(f). Second, a party may appeal the ALJ's decision to the State Board of Education, who appoints a State Hearing Review Officer to conduct an impartial review of the ALJ's findings and issue an independent decision. N.C. Gen. Stat. § 115C-109.9(a).

"If unsuccessful in this administrative process, the parent may file a civil action in state or federal court 'with respect to the complaint presented' under the IDEA." *Johnson*, 20 F.4th at 839-40 (citing N.C. Gen. Stat. § 115C-109.9(a); 20 U.S.C. § 1415(i)(2)(A)). Though IDEA claims begin within state administrative proceedings, "[a]n action filed in federal district court under the IDEA … is an original civil action, not an appeal from a state administrative agency." *Id.* at 844

5

(citing *Kirkpatrick*, 216 F.3d at 387). Thus, "[f]ederal pleading standards are applicable to claims filed under the IDEA in federal court." *Id.*

Before filing in federal court, a party must exhaust the above administrative procedures, but the exhaustion requirement is not jurisdictional. 20 U.S.C. § 1415(l); *Fry*, 580 U.S. at 157-58; *K.I. v. Durham Pub. Sch. Bd. of Educ.*, 54 F.4th 779, 792 (4th Cir. 2022). Instead, the IDEA's exhaustion requirement is a claims-processing rule. *K.I.*, 54 F.4th at 792 ("We hold the IDEA's exhaustion requirement is not a jurisdictional requirement but a claims-processing rule").

"Claim-processing rules … are rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). "If properly invoked, mandatory claim-processing rules must be enforced, but they may be waived or forfeited." *Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17, 20 (2017). Thus, where a plaintiff fails to exhaust his administrative remedies under the IDEA and a defendant properly raises the issue, dismissal on that basis can be proper. *See K.I.*, 54 F.4th at 792-94. There remains one final important distinction between jurisdictional requirements and claims-processing rules: while federal courts are totally prohibited from providing relief in actions over which they have no jurisdiction, courts may fashion equitable remedies for violations of claims-processing rules. *Id.* at 793 (dismissing an IDEA claim for failure to exhaust administrative requirements because, in part, appellants "have not raised any equitable arguments that apply here").

Thus, a defendant seeking dismissal based on the IDEA's exhaustion requirement must bring the issue before the district court, and, even if the defendant does so, the court may decline to dismiss the action under equitable principles. *See id.* at 790-94. The exhaustion requirement also applies, as a claims-processing rule, to claims brought under the ADA or the Rehabilitation Act

6

that seek restitution for the denial of a FAPE through remedies available under IDEA. 20 U.S.C. § 1415(l); *see Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 147 (2023); *Fry*, 580 U.S. at 165; *K.I.*, 54 F.4th at 792.

Regardless of these changes, however, a district court's purview under the IDEA is limited to review of the final "findings and decision" of the administrative proceedings. 20 U.S.C.A. § 1415(i)(2)(A). Thus, when the administrative process does not reach the merits of an applicant's IDEA claim, but instead dismisses the claim on a procedural basis, there is no "finding or decision" for the district court to review, and the plaintiff failed to exhaust his administrative remedies. *See M.E. ex rel. C.E. v. Buncombe Cnty. Bd. of Educ.*, 72 F. App'x 940, 941 (4th Cir. 2003).[1]

Still, even if a party fails to exhaust his administrative remedies, the Fourth Circuit recognizes three "narrow" exceptions to the exhaustion requirement: (1) where the administrative process would be futile; (2) when the parents do not receive the proposed notice of their administrative rights; or (3) where exhaustion would be harmful to the child. *K.I.*, 54 F.4th at 793 n.8. Absent one of these exceptions or compelling equitable grounds, this Court must enforce the IDEA's exhaustion requirement. *See id.* at 793.

Under these principles, this Court is duty-bound to apply the exhaustion requirement as a mandatory claims-processing rule. The Plaintiffs agree that the administrative process here did not reach the merits of their case – indeed, that the ALJ and SRO dismissed their case without reaching its merits is a protest that undergirds Plaintiffs' entire action. (Doc. No. 1 at ¶¶ 247, 254; Doc. No. 15 at 9, 17). The decision at issue here – dismissal with prejudice as a sanction – is a procedural

---

[1] Though the Fourth Circuit in *Buncombe County* described IDEA's exhaustion requirements as jurisdictional, rather than as the claims-processing rule now adopted in *K.I. v. Durham Public Schools Board of Education*, 54 F.4th 779, 792 (4th Cir. 2022), *Buncombe County*'s logic as to the finality of administrative proceedings is sound.

7

dismissal akin to that in *Buncombe County*, and thus, there is no final finding or decision for this Court to review. Plaintiffs therefore failed to exhaust their administrative remedies, and because Defendants properly brought the issue before this Court, (Doc. No. 10), Plaintiffs' IDEA claims are dismissed.

Plaintiffs contend that the Magistrate Judge erred in dismissing their IDEA claims because the exhaustion requirement's futility exception applies here. (Doc. No. 23 at 7). It does not. To demonstrate futility, a plaintiff must make a "clear and positive" showing that any pursuit of administrative remedies would be fruitless. *See Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir. 1989). In short, the futility exception has been applied only when resort to administrative remedies is "clearly useless." *Demastes v. Midwest Diversified Mgmt. Corp*, No. 3:19-cv-00065-RJC-DCK, 2020 U.S. Dist. LEXIS 50606, at *10 (W.D.N.C. Mar. 24, 2020) (Conrad, J.). "Furthermore, to satisfy their burden, the plaintiff must demonstrate that the underlying purposes of exhaustion would not be furthered by enforcing the exhaustion requirement." *K.I. v. Durham Pub. Sch. Bd. of Educ.*, No. 1:19CV857, 2020 WL 3512213, at *6 (M.D.N.C. June 29, 2020), *aff'd*, 54 F.4th 779 (4th Cir. 2022) (internal citations omitted). These underlying purposes include "allowing states to use their special expertise to resolve educational disputes," *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 514 (4th Cir. 2014), and allowing states the opportunity to correct misconduct "without resort to lengthy and costly trial." *Learning Disabilities*, 837 F. Supp. at 724–25.

Plaintiffs argue, in essence, that the futility exception applies because the ALJ's findings were not regularly made. (Doc. No. 23 at 10-12). That argument commingles two different standards; whether findings are "regularly made" determines whether those findings are entitled

8

to deference, *Doyle*, 953 F.2d at 105, while the futility exception serves as an outright exception to dismissal for a party's failure to exhaust his administrative remedies. *K.I.*, 54 F.4th at 793.

The futility exception applies "when the IDEA violation at issue is unresolvable through the appeals process," *Koster v. Frederick Cty. Bd. of Educ.*, 921 F. Supp. 1453, 1455 (D. Md. 1996) (citing *J.G. v. Board of Educ. of Rochester Cty.*, 830 F.2d 444 (2d Cir. 1987)), but Plaintiffs have not demonstrated that their issue was indeed unresolvable. Instead, in earlier briefing, they conflate their dissatisfaction with the ALJ's inability to resolve their issues. Resort to administrative remedies was not "clearly useless" – to the contrary, Plaintiffs and Defendants engaged in the administrative process to a point, even nearing settlement. (Doc. No. 15 at 3). Only when Plaintiffs failed to participate did the administrative process break down, and Plaintiffs' failure to participate – not the ALJ's inability to resolve the issue – brought eventual dismissal.

Moreover, Plaintiffs fail to demonstrate, or even to argue, that enforcing the exhaustion requirement would not further the underlying purpose of "allowing states to use their special expertise," *Lorsson*, 773 F.3d at 514, or affording them the opportunity to correct misconduct "without resort to lengthy and costly trial." *Learning Disabilities*, 837 F. Supp. at 724–25. Thus, Plaintiffs fail to show the futility exception applies.[2]

To address Plaintiffs' objections, however, the Court will take this opportunity to consider whether the ALJ's findings were "regularly made." In evaluating the regularity of an ALJ's decision, this Court considers "*the way* in which the state administrative authorities have arrived at their administrative decision and *the methods* employed." *Bouabid*, 62 F.4th at 857 (emphasis in original). To apply that standard, the Court will determine whether the officer conducted "a

---

[2] Plaintiffs do not argue that any other exception applies, and none does; C.A.'s parents did receive the proposed notice of their administrative rights and exhaustion of Plaintiffs' administrative remedies here would not be harmful to C.A. *See K.I.*, 54 F.4th at 793 n.8.

9

proper hearing, allowing the parents and the School Board to present evidence and make arguments, and the hearing officer by all indications resolved the factual questions in the normal way, without flipping a coin, throwing a dart, or otherwise abdicating his responsibility to decide the case." *J.P.*, 516 F.3d at 259. Plaintiffs argue the state administrative authorities here "made decisions without supporting evidence, refused to consider evidence, and made inconsistent decisions," and Plaintiffs recount several specific grievances, which they also outline in earlier briefing. (Doc. No. 23 at 8-10; Doc. No. 15 at 17-22).

The ALJ's chosen methods in adjudicating this case were not so irregular as to constitute an abdication of her responsibility. Plaintiffs make much of the procedures surrounding certain hearings and expert witnesses in this case, but the ALJ ultimately dismissed this case because Plaintiffs refused to comply with discovery orders, even after sanctions. (Doc. No. 1-1 at ¶¶ 5, 7, 9, 14, 16). Throughout the record, the ALJ managed the case "in the normal way," *see J.P.*, 516 F.3d at 259, affording Plaintiffs extra latitude and dismissing the case only when it would be "unjust and inappropriate" for the case to proceed, considering the "severity of the disobedience of [Plaintiffs] in refusing to provide discovery in a lawsuit [they] instituted, [their] unjustified noncompliance with the mandatory North Carolina Rules of Civil Procedure, and [their] failure to comply fully and timely" with discovery orders. (*Id.* at Conclusion of Law, ¶ 1).

Plaintiffs appear to argue that the ALJ's decision should be afforded no deference, *see Combs*, 15 F.3d at 361, because the ALJ based her discovery noncompliance findings on erroneous statements by defense counsel, i.e., that the discovery Defendants sought did not actually exist. (Doc. No. 23 at 9). The argument strains credulity. In dismissing this case for Plaintiffs' noncompliance, the ALJ noted that Plaintiffs refused to provide certain information, first claiming the request was "unduly burdensome," then later that the information was irrelevant, and finally,

10

that Plaintiffs or their counsel were too technologically unsophisticated to check for the information. (Doc. No. 1-1 at ¶ 16). Over the course of this litigation, the ALJ allowed Plaintiffs to proceed for more than two months without a "legitimate excuse or justification" regarding their failure to produce responsive documents, until just two weeks before the scheduled hearing. (*Id.* at ¶¶ 18, 20). At that point, and only when "[l]esser sanctions would be unjust and inappropriate," the ALJ dismissed the case. (*Id.* at Conclusions of Law ¶ 1). Viewing the ALJ's decision in light of Plaintiffs' misconduct reveals that the ALJ did not "abdicate [her] responsibility to decide the case," *J.P.*, 516 F.3d at 259, and therefore, after reviewing the record before it in context, the Court finds that the ALJ's decision was regularly made. Plaintiffs' objection is without merit.

Finally, because Plaintiffs "have not identified any equitable principles that permit [this Court] to meddle in a state's interpretation of its laws," *K.I.*, 54 F.4th at 793, they cannot rely on this Court's equitable powers to reach past the exhaustion requirement and grant relief. This Court does not have the "power to sit as [a] tribunal[] over state court or administrative proceedings … Federal district courts cannot directly supervise and supplant state administrative action by affirming, reversing, or modifying administrative decisions." *See id.* at 794 (quoting *Kirkpatrick*, 216 F.3d at 387). Accordingly, recognizing that "[i]mportant principles of federalism are at stake here," *id.*, the ALJ's decision will stand. Plaintiffs failed to exhaust their administrative remedies, and Plaintiffs' IDEA claims (Counts I, II, and III) are therefore dismissed.

### 2. Plaintiffs' ADA and Section 504 Claims Fail

While 20 U.S.C. § 1415(l)'s exhaustion requirement bars Plaintiffs' IDEA claim, those same requirements do not doom Plaintiffs' claims under the ADA or Section 504. When the gravamen of a plaintiff's Section 504 or ADA claim is relief for the denial of a FAPE, § 1415(l)'s exhaustion requirements can apply to those claims. *Fry*, 580 U.S. at 168. That exhaustion

11

requirement, however, "applies *only* to suits that seek relief also available under IDEA." *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 147 (2023) (cleaned up) (emphasis in original).[3] Thus, even a suit "admittedly premised on the past denial of a free and appropriate education may nonetheless proceed without exhausting IDEA's administrative processes if the remedy a plaintiff seeks is not one IDEA provides." *Id.* at 150. Therefore, when a plaintiff brings Section 504 or ADA claims seeking a remedy unavailable under IDEA – such as compensatory damages – the plaintiff need not satisfy 1415(l)'s exhaustion requirements to proceed. *Id.* at 147-48.[4]

Plaintiffs object to the Magistrate Judge's dismissal of their Section 504 and ADA claims on two bases: first, because those claims "are not simply reformulated IDEA claims," and second, because those claims seek "monetary damages" not available under IDEA. (Doc. No. 23 at 14, 16). Plaintiffs' first objection is without merit. To determine whether "the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination," this Court considers two questions: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Fry*, 580 U.S. at 171. When the answer to these questions is no, the gravamen of the complaint is likely denial of a FAPE. *Id.* In addition to these considerations, "prior pursuit of the IDEA's administrative remedies will often

---

[3] The Supreme Court reached its decision in *Luna Perez* on March 21, 2023, shortly before the Magistrate Judge issued the M&R in this action. Though the Magistrate Judge reached his decision without reference to *Luna Perez*, Plaintiffs and Defendants posture their objections and replies in view of *Luna Perez*'s changes. (Doc. Nos. 23, 24).

[4] *See also Farley v. Fairfax Cnty. Sch. Bd.*, No. 21-1183, 2023 WL 3092979, at *1 (4th Cir. Apr. 26, 2023) (vacating and remanding district court's dismissal of IDEA-related ADA and Section 504 claims where the court did not consider the remedy plaintiff sought).

provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term." *K.I.*, 54 F.4th at 795.

Here, Plaintiffs do seek relief for denial of a FAPE under their ADA and Section 504 claims. Plaintiffs explicitly reference Defendants' "fail[ure] to provide C.A. with a FAPE," (Doc. No. 1 at ¶ 378), and allege C.A. "was not provided appropriate academic and behavioral supports." (Doc. No. 1 at ¶ 396). As the Magistrate Judge observed:

> Plaintiffs could not lodge these same concerns if the conduct had occurred at a non-school facility, for the essence of the Complaint relates to deprivation of his education-related aides. Nor could an adult at the school press the same grievances that Plaintiffs allege here, for only a student with an IEP could file a lawsuit concerning the type of conduct at issue in this case.

(Doc. No. 20 at 14). Plaintiffs counter that "[t]he simple fact here is that Defendant intentionally and maliciously discriminated against C.A. because of his disabilities" – "he was not able to hear, … he was not provided accommodations that enabled him to hear, and he was denied access to services to which nondisabled individuals had access." (Doc. No. 23 at 15). Plaintiffs undermine their own objection; each of these claims points back to a free and appropriate public education. The "gravamen" of the Section 504 and ADA claims is, therefore, Defendants' denial of a FAPE.

The remedy Plaintiffs seek under their ADA and Section 504 claims, however, is not one available under IDEA. Plaintiffs seek "damages in excess of TEN THOUSAND DOLLARS ($10,000)," on both their ADA and Section 504 claims, (Doc. No. 1 at ¶¶ 388, 407), and they argue these damages are "separate from the IDEA." (Doc. No. 23 at 16). Plaintiffs' second objection on this point is valid; having decided this issue without the benefit of *Luna Perez v. Sturgis Public Schools*, the Magistrate Judge erred in concluding that because Plaintiffs' ADA and Section 504 claims concern the denial of a FAPE, they necessarily fail without administrative exhaustion.

13

The Magistrate Judge also concluded – and Defendant now echoes – that Plaintiffs "effectively concede[d]" the issue of administrative exhaustion for their Section 504 and ADA claims by failing to address the exhaustion argument in their briefing on the motion to dismiss. (Doc. No. 20 at 14 n.3). Nevertheless, because the Court now reviews the issue de novo, because Plaintiffs object to the Magistrate Judge's conclusion, and because the Supreme Court's decision in *Luna Perez v. Sturgis Public Schools* offers new guidance, Plaintiffs' failure to exhaust their administrative remedies – and their related failure to argue the point in initial briefing – does not frustrate their ADA and Section 504 claims. *See Farley v. Fairfax Cnty. Sch. Bd*., No. 21-1183, 2023 WL 3092979, at *1 n.2 (4th Cir. Apr. 26, 2023) ("While Plaintiffs did not make this argument below, we regularly consider new arguments on appeal related to intervening precedent, like *Luna Perez*.").

Still, though Plaintiffs' claims under the ADA and Section 504 do not expressly fail with their IDEA claims, they fail as a matter of law. In the Fourth Circuit, a claim under Section 504 or the ADA in the context of the education of disabled children requires "something more than a mere failure to provide the [FAPE] required by [IDEA]." *Sellers by Sellers v. Sch. Bd. of City of Mannassas, Va.*, 141 F.3d 524, 529 (4th Cir. 1998); *Vlasaty v. Wake Cty. Pub. Sch. Sys. Bd. of Educ.*, No. 5:17-cv-578-D, 2018 WL 4515877, at *7, 2018 U.S. Dist. LEXIS 160808, at *21 (E.D.N.C. Sept. 20, 2018). In such context, Plaintiff must allege either bad faith or gross misjudgment. *Sellers*, 141 F.3d at 529; *Vlasaty*, 2018 WL 4515877, at *6-7, 2018 U.S. Dist. LEXIS 160808, at *21. "This additional element is required in the educational context to distinguish an IDEA violation for failing to provide a [FAPE], which does not require bad faith or gross misjudgment and which cannot result in the imposition of monetary damages, from a Rehabilitation Act [or ADA] violation for the same failure." *Godbey v. Iredell Mem'l Hosp., Inc.*,

14

No. 5:12-cv-00004, 2013 WL 4494708, at *6, 2013 U.S. Dist. LEXIS 117129, at *19 (W.D.N.C. Aug. 19, 2013). "Such a high bar in this specific context is justified by the delicate role that courts play in reviewing education decisions." *K.D. v. Starr*, 55 F. Supp. 3d 782, 789 (D. Md. 2014).

"The 'bad faith or gross misjudgment standard' is extremely difficult to meet, especially given the great deference to which local school officials' educational judgments are entitled." *Doe v. Arlington Cnty. Sch. Bd.*, 41 F. Supp. 2d 599, 609 (E.D. Va. 1999), *aff'd sub nom. Doe ex rel. Doe v. Arlington Cnty. Sch. Bd.*, 210 F.3d 361 (4th Cir. 2000); *see also K.D.*, 55 F. Supp. 3d at 790 ("The Fourth Circuit has indicated that allegations of negligence, standing alone, are insufficient."). "Ultimately, plaintiffs must allege that the school's actions depart[ed] substantially from accepted professional judgment, practice or standards as to demonstrate that the persons responsible did not base the decision on such a judgment." *D.N. v. Louisa Cty. Pub. Sch.*, 156 F. Supp. 3d 767, 776 (W.D. Va. 2016) (quotation marks omitted).

Here, the Complaint lacks factual allegations to support a finding of bad faith or gross misjudgment by Defendants, and Plaintiffs' conclusory allegations using such language to describe Defendants' conduct are insufficient. (Doc. No. 1 at ¶¶ 204-08, 218-27, 376-87); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). To the contrary, Plaintiffs describe in their complaint a school and its faculty following state requirements during the COVID-19 pandemic, then making measured – though difficult – decisions about when to return all students to in-person learning, and finally, grappling with an untimely flood in their facilities. (Doc. No. 1-1 at ¶¶ 58-77). At worst, Plaintiffs allege that Defendants mishandled C.A.'s return to in-person learning by offering only at-home learning or learning in a "self-contained classroom" at the high school campus, neither of which were satisfactory. (*Id.* at ¶ 93). These allegations reveal neither bad faith

15

nor gross misjudgment, and Plaintiffs fail to meet the "high bar" demanded of them. Thus, though Plaintiffs' ADA and Section 504 claims do not fail for lack of administrative exhaustion, those claims do fail independently as a matter of law. Counts IV and V are therefore dismissed.

### 3. Plaintiffs' Section 1983 Claim Fails

"Because IDEA provides a comprehensive remedial scheme for violations of its own requirements … parties may not sue under section 1983 for an IDEA violation." *Sellers*, 141 F.3d at 529. Instead, to prevail under a Section 1983 claim, a plaintiff must "prove a school board intended to treat children differently because of their disabilities." *Id.* at 530 (cleaned up). Furthermore, "because the Supreme Court has yet to classify disabled persons as a suspect class, *see City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 445–46 (1985), and because the Court also has not identified education as a fundamental right, *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33–37 (1973), a plaintiff in this context would have to prove that a school board's decision was without any rational basis." *Sellers*, 141 F.3d at 530-31. Here, Plaintiffs' Section 1983 claim fails under both the threshold test and under the rational basis test.

In holding that IDEA's exhaustion requirement "applies only to suits that seek relief also available under IDEA," *Luna Perez*, 598 U.S. at 147, the Supreme Court does not foreclose *Sellers*' restriction on IDEA-based claims brought under Section 1983.[5] Before *Luna Perez*, claims seeking relief for the denial of a FAPE necessarily failed when the plaintiff failed to exhaust his

---

[5] *Sellers* interpreted the 20 U.S.C. § 1415(f) (1986), which now appears in near identical form as 20 U.S.C. § 1415(l), save the addition of the Americans with Disabilities Act of 1990. The statute provides: "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter."

16

administrative remedies under the IDEA. *See, e.g.*, *Farley v. Fairfax Cnty. Sch. Bd.*, No. 1:20CV1249, 2021 WL 10883251, at *1 (E.D. Va. Jan. 19, 2021), *vacated and remanded*, No. 21-1183, 2023 WL 3092979 (4th Cir. Apr. 26, 2023). *Luna Perez* clarified the administrative exhaustion requirement; now, if a claim under a different federal law seeks relief not available under the IDEA, such as compensatory damages, that claim can proceed without administrative exhaustion. *Luna Perez*, 598 U.S. at 148.

The Fourth Circuit in *Sellers* was careful, however, to differentiate between Section 1983 and the IDEA's exhaustion discussion:

> [W]hile section [1415(l)] explicitly preserves remedies under the Constitution, the Rehabilitation Act, and specified "other" statutes, it simply fails to mention section 1983. The reference to 'other' statutes protecting the rights of disabled children cannot naturally be read to include 42 U.S.C. § 1983, a statute which speaks generally and mentions neither disability nor youth. By preserving rights and remedies "under the Constitution," section [1415(l)] does permit plaintiffs to resort to section 1983 for constitutional violations, notwithstanding the similarity of such claims to those stated directly under IDEA. But section [1415(l)] does not permit plaintiffs to sue under section 1983 for an IDEA violation, which is statutory in nature.

*Sellers*, 141 F.3d at 530. The distinction is meaningful: "Under IDEA, the simple failure to provide a child with a free appropriate public education constitutes a violation of the statute. By contrast, plaintiffs must meet a higher standard of liability to prevail on a constitutional claim." *Id.* (internal citations omitted). *See also Benson v. Fort Mill Sch./York Cnty. Dist. 4*, No. 0:22-CV-614-SAL-SVH, 2023 WL 4145029, at *2 (D.S.C. June 22, 2023) (applying *Sellers*, post-*Luna Perez*, to dismiss a Section 1983 claim); *cf. Chollet v. Brabrand*, No. 22-1005, 2023 WL 5317961, at *1 (4th Cir. Aug. 18, 2023) (vacating and remanding district court's dismissal of IDEA-related 1983 claims where the district court dismissed for failure to exhaust administrative remedies).

As the Magistrate Judge noted, (Doc. No. 20 at 16), Plaintiffs' Section 1983 claim, (Doc. No. 1 at ¶¶ 386-97), is a prohibited "suit under section 1983 for an IDEA violation." *Sellers*, 141

17

Case 3:22-cv-00035-RJC-DCK   Document 25   Filed 09/06/23   Page 17 of 20

F.3d at 529. Plaintiffs object that "Magistrate Keesler erred when he found the … due process claims were only related to FAPE allegations," (Doc. No. 23 at 15-16), but Plaintiffs fail to further explain the alleged error, and, in any event, their objection is without merit.[6] Nowhere, in fact, do Plaintiffs plead any facts outside their underlying IDEA claims, except to include conclusory paragraphs restating certain elements of the Section 1983 claim.

Moreover, even without *Sellers'* restriction on Plaintiffs' Section 1983 claims, those claims still fail as a matter of law: "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Martin v. Duffy*, 858 F.3d 239, 252 (4th Cir. 2017). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

Here, the Complaint is devoid of allegations identifying students who are similarly situated to Plaintiff or allegations of any disparate treatment. Therefore, the Complaint fails to state a claim under Section 1983. *See Bouabid v. Charlotte Mecklenburg Sch. Bd. of Educ.*, No. 319CV00030RJCDSC, 2020 WL 1082491, at *5 (W.D.N.C. Mar. 6, 2020) (Conrad, J.) (dismissing claims under § 1983 in a complaint essentially identical to the one at issue here).

---

[6] (Doc. No. 1 at ¶ 388 ("Plaintiff was denied the right to have his … claims heard pursuant to the IDEA,"); *Id.* at ¶ 390(a)(i) ("Defendant refused to provide children with HI, like C.A., with in-person special education"); *Id.* at ¶ 390(a)(ii) ("Defendant refused to provide children with in-person educational services in the regular education classroom"); *Id.* at ¶ 390 (a)(viii) ("[Defendant failed] to ensure Defendant's agents … complied with and carried out their responsibilities pursuant to the IDEA"); *Id.* at ¶ 392 ("The acts by Defendants constitute a disregard for, and deliberate indifference to, C.A.'s constitutionally protected interests, including his property interest in educational benefits").

18

Finally, even if Plaintiffs' Section 1983 claim had passed these bars, "[t]o survive a motion to dismiss for failure to state a claim [under the rational basis test], a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Giarratano v. Johnson*, 521 F.3d 298, 303-04 (4th Cir. 2008) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)). Plaintiffs do not address the rational basis requirement for their Section 1983 claim. Defendants, on the other hand, argue that C.A.'s disabilities necessitate that Defendants educate him differently, and thus, that Defendants have a rational basis for their actions. (Doc. No. 10 at 21-22). Defendants are correct – Plaintiffs have alleged no facts sufficient to overcome the presumption of rationality. The decisions that Defendants made, while perhaps unwelcome, were motivated by necessity – either a flooded building or order of the Governor – and Plaintiffs have not alleged facts sufficient to suggest otherwise. Thus, Plaintiffs' claim under Section 1983, comprising Count VI, is dismissed.

Plaintiffs' final claim, Count VII, requests attorneys' fees and costs. (Doc. No. 1 at ¶¶ 399-400); (Doc. No. 1 at 85 (requesting attorneys' fees under Section 1983, IDEA, Section 504, and the ADA)). As the Magistrate Judge noted (without objection from Plaintiffs), because Plaintiffs' IDEA claim fails, as do their claims under the ADA, Section 504, and Section 1983, so too do their claims for attorneys' fees.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The M&R, (Doc. No. 20), is **ADOPTED IN PART**. Specifically, the M&R is **NOT ADOPTED** insofar as it dismisses Plaintiffs' claims under Section 504 and the ADA for Plaintiffs' failure to exhaust their administrative remedies; and

19

2. Defendants' Motion to Dismiss, (Doc. No. 9), is **GRANTED**. The Clerk is directed to close this case.

Signed: September 5, 2023

Robert J. Conrad, Jr.
United States District Judge